UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-5551- |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| KANSAS CITY SOUTHERN, LYDIA I. | : **SECURITIES EXCHANGE ACT OF** |
| BEEBE, LU M. CÓRDOVA, ROBERT J. | : **1934** |
| DRUTEN, ANTONIO O. GARZA, JR., | : |
| DAVID GARZA-SANTOS, JANET H. | : **JURY TRIAL DEMANDED** |
| KENNEDY, MITCHELL J. KREBS, HENRY | : |
| J. MAIER, THOMAS A. MCDONNELL and | : |
| PATRICK J. OTTENSMEYER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Kansas City Southern ("Kansas City Southern or the "Company") and the members Kansas City Southern's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Kansas City Southern and Canadian National Railway Company and its affiliates ("Canadian National Railway").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form F-4 (the

"Registration Statement") to be filed on June 22, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Brooklyn Merger Sub, Inc., a wholly owned subsidiary of Canadian National Railway, will merge with and into Kansas City Southern with Kansas City Southern surviving as a wholly owned subsidiary of Canadian National Railway (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Kansas City Southern stockholder will receive: (i) 1.129 Canadian National Railway shares; and (ii) $200.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Kansas City Southern's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Kansas City Southern's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because MacKenzie Partners, Inc., Kansas City Southern's proxy solicitor, is headquartered in this District, and the closing of the Proposed Transaction will take place in this District, at the offices of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Kansas City Southern stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Lydia I. Beebe has served as a member of the Board since 2017.

11. Individual Defendant Lu M. Córdova has served as a member of the Board since 2010.

12. Individual Defendant Robert J. Druten has served as a member of the Board since 2004 and is the Chairman of the Board.

13. Individual Defendant Antonio O. Garza, Jr. has served as a member of the Board since 2010.

14. Individual Defendant David Garza-Santos has served as a member of the Board since 2016.

15. Individual Defendant Janet H. Kennedy has served as a member of the Board since 2019.

16. Individual Defendant Mitchell J. Krebs has served as a member of the Board since 2017.

17. Individual Defendant Henry J. Maier has served as a member of the Board since 2017.

18. Individual Defendant Thomas A. McDonnell has served as a member of the Board since 2003.

19. Individual Defendant Patrick J. Ottensmeyer has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

20. Defendant Kansas City Southern a Delaware corporation and maintains its principal offices at 427 West 12th Street, Kansas City, MO 64105.  The Company's stock trades on the New York Stock Exchange under the symbol "KSU."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.  **The Proposed Transaction**

23.   Kansas City Southern, a transportation holding company, provides domestic and international rail transportation services in North America. The company serves a ten-state region in the Midwest and southeast regions of the United States and has the shortest north/south rail route between Kansas City, Missouri, and ports along the Gulf of Mexico in Alabama, Louisiana, Mississippi, and Texas. It operates a commercial corridor of the Mexican railroad system and has its direct rail passageway between Mexico City and Laredo, Texas. The Company provides rail access to the United States and Mexico border crossing at Nuevo Laredo, Tamaulipas; and controls and operates the southern half of the rail bridge at Laredo, Texas, as well as the northern half of this bridge. Kansas City Southern also offers rail access to the port of Lazaro Cardenas on the Pacific Ocean; and owns a 160-mile rail line extending from Laredo, Texas to the port city of Corpus Christi, Texas. Its rail network comprises approximately 7,100 route miles extending from the Midwest and Southeast portions of the United States south into Mexico. The Company serves the chemical and petroleum, industrial and consumer products, agriculture and minerals, energy, intermodal, and automotive markets. Kansas City Southern was founded in 1887 and is headquartered in Kansas City, Missouri.

24.   On May 21, 2021, the Company and Canadian National Railway jointly announced the Proposed Transaction:

> MONTREAL and KANSAS CITY, Mo., May 21, 2021 (GLOBE NEWSWIRE) -- CN (TSX: CNR, NYSE: CNI) and Kansas City Southern (NYSE: KSU) ("KCS") today announced that they have entered into a definitive merger agreement to create the premier railway for the 21st century.
>
> Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, KCS shareholders will receive $325[2] per common share based on CN's May 13, 2021 offer,

which implies a total enterprise value of $33.6 billion, including the assumption of approximately $3.8 billion of KCS debt. KCS shareholders will receive $200 in cash and 1.129 shares of CN common stock for each KCS common share, with KCS shareholders expected to own 12.6% of the combined company. This represents an implied premium of 45% when compared to KCS' unaffected closing stock price on March 19, 2021. KCS' preferred shareholders will receive $37.50 in cash for each preferred share.

"We are thrilled that KCS has agreed to combine with CN to create the premier railway for the 21st century. I would like to thank the numerous stakeholders of both companies who have demonstrated overwhelming support for this compelling combination, and we look forward to delivering the many benefits of this pro-competitive transaction to them. I am confident that together with KCS' experienced and talented team, we will meaningfully connect the continent – enhancing competition, offering more choice for customers, and driving environmental stewardship and shareholder value."
- JJ Ruest, president and chief executive officer of CN

"As North America's most customer-focused transportation provider, we are excited about this combination with CN, which will provide customers access to new single-line transportation services at the best value for their transportation dollar, and increase competition among the Class 1 railroads. Our companies' cultures are strongly aligned, and we share a commitment to environmental stewardship, safe operations, reliable service and outstanding performance. As a larger continental enterprise with complementary routes and an enhanced platform for revenue growth, capital investment, and job creation, we will be positioned to deliver on the transaction's powerful synergies which will create new growth opportunities for our customers, employees, labor partners, communities and shareholders." - Patrick J. Ottensmeyer, president and chief executive officer of KCS

"KCS is the ideal partner for CN to connect the continent, helping to drive North American trade and economic prosperity. We are confident in our ability to gain the necessary regulatory approvals and complete the combination with KCS, and we look forward to combining with KCS to create new opportunities, more choice and a stronger company." - Robert Pace, chair of the board of CN

**Compelling Strategic and Financial Rationale**
*Creates the premier railway for the 21st century*.

> The combination of CN and KCS will further accelerate CN's industry-leading growth profile by connecting North America's industrial corridor to create new options for shippers and new revenue for the combined company. A CN-KCS combination will substantially help realize the many benefits of the USMCA, bringing it to life in a meaningful way.
> 
> ***Brings together highly complementary networks to benefit customers.*** CN and KCS will create a safer, faster, cleaner and stronger railway that is ideally positioned to support the growth of an emerging consumption-based economy through better service options and customer choice.
> 
> ***Enhances competition.*** This combination will create an express route that connects the U.S., Mexico and Canada with a seamless single-owner, single-operator service, and preserves access to all existing gateways to enhance route choices and ensure robust price competition.
> 
> ***Delivers significant value to KCS shareholders.*** CN's proposal delivers an implied premium of 45% to KCS shareholders, as well as participation in the significant upside of the combined company. Additionally, KCS shareholders will have the ability to receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021. This combination will also significantly expand the combined company's total addressable market ("TAM") – CN and KCS would target $8 billion of TAM opportunity while supporting growth across the rapidly growing USMCA network.
> 
> ***Presents compelling synergies and pro-forma financial metrics.*** CN currently estimates that the combination would result in EBITDA synergies approaching $1 billion annually, with the vast majority of synergies coming from additional revenue opportunities. CN anticipates the transaction to be accretive to CN's adjusted diluted earnings per share in the first full year following CN assuming control of KCS.
> 
> ***Accelerates innovation.*** CN and KCS share cultures that value safety, service and environmental stewardship. CN and KCS will accelerate innovation and investment as CN brings its industry-leading safety technology and fuel efficiency to the KCS network.
> 
> ***Yields demonstrable benefits for the environment.*** The combination will yield demonstrable benefits for the environment by converting significant volumes of truck traffic onto rails, delivering better fuel efficiency at lower cost. CN has the ability to remove more than 300 trucks from the road with every additional freight train. Because trains are 4 to 5 times more fuel-efficient than trucks, the combined company will also have an opportunity to realize a 75% reduction in greenhouse gas emissions, resulting in cleaner air for local communities along CN's line. While preventing

thousands of tons of emissions from entering the atmosphere every day, the expected conversion of truck traffic to rails will also reduce traffic congestion in these regions.

***Creates opportunities for local communities.*** Upon the closing of the transaction, CN will maintain corporate headquarters in Montreal, Canada, and establish Kansas City, Missouri, as the combined company's United States headquarters. The Mexico headquarters will remain in Mexico City and the operations center in Monterrey. CN will make significant infrastructure investments in key communities across the new network, including Illinois, Missouri, Michigan, Louisiana and Texas, meaning more economic opportunity and more jobs.

**Financing**

The cash portion of the consideration will be funded through a combination of cash-on-hand and approximately $19 billion of new debt. Upon closing of the transaction and including the assumption of approximately $3.8 billion of KCS debt, we expect to have outstanding debt of approximately $33 billion, representing a leverage ratio of 4.5x pro forma 2021 EBITDA[3], and we expect to maintain an investment grade credit rating. Based on the proposed exchange ratio and CN's current quarterly dividend of C$0.615 per CN share, KCS shareholders are expected to receive the equivalent of $2.30 in annual dividends per KCS share.

**Approvals and Timing**

CN and KCS are confident in their ability to obtain all necessary regulatory approvals, including from the Surface Transportation Board ("STB") and the Federal Economic Competition Commission (COFECE) and Federal Telecommunications Institute (IFT) in Mexico.

CN has proposed a "plain vanilla" voting trust. Upon KCS shareholder approval of the transaction, and satisfaction of customary closing conditions, CN will acquire KCS shares and place them into the voting trust. KCS shareholders will receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.

Following this step, the STB and other regulatory authorities must approve CN's control of KCS. The completion of the transaction is expected to take place in the second half of 2022. Upon completion, CN and KCS will begin the integration process to realize the significant benefits of the combination for their stakeholders.

> For more information on CN's acquisition of KCS, please visit www.ConnectedContinent.com.
>
> **Advisors**
> J.P. Morgan and RBC Capital Markets are acting as CN's financial advisors, and Centerview Partners LLC is also serving as a financial advisor. Cravath, Swaine & Moore LLP, Sidley Austin LLP, Norton Rose Fulbright LLP, Torys LLP, Agon and Stikeman Elliot LLP are providing legal counsel to CN.
>
> BofA Securities and Morgan Stanley & Co. LLC are serving as financial advisors to Kansas City Southern. Wachtell, Lipton, Rosen & Katz, Baker & Miller PLLC, Davies Ward Phillips & Vineberg LLP, WilmerHale, and White & Case, S.C. are serving as legal counsel to Kansas City Southern.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Kansas City Southern's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.  **The Materially Incomplete and Misleading Registration Statement**

26. On June 22, 2021, Kansas City Southern and Canadian National Railway jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning

9

whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by BofA in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Canadian National Railway Projections") and provided them to the Board and the financial advisors by management of both Kansas City Southern and Canadian National Railway with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2029: EBITDA; Earnings per share (adjusted); and Unlevered Free Cash Flows as prepared by the Company's management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. For the Canadian National Railway Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2029: Adjusted EBITDA; and Unlevered Free Cash Flows as prepared by Canadian National Railway management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

32. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration

Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to BofA's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose: (i) the merger values for each transaction reviewed; (ii) the merger consideration paid to the shareholders of the target companies in the selected transactions; (iii) the estimates of the target companies' EBITDA; and (iv) the closing dates of the selected transactions.

34. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values of Kansas City Southern; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2021 through 2029; (iii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.5%; (v) the net debt of the Company as of March 31, 2021; (vi) the number of fully diluted outstanding Kansas City Southern common stock; (vii) the Company's preferred equity and minority interest as of March 31, 2021; and (viii) estimate of the Company's weighted average cost of capital.

35. With respect to BofA's *Wall Street Analysts Price Targets* analysis for the Company, the Registration Statement fails to disclose: (i) the analysts reviewed by BofA; (ii) the price targets for the shares of Company common stock available as of March 19, 2021; and (iii) the inputs used to calculate the mid-point cost of equity discount rate of 7.7%.

36. With respect to BofA's *Present Value of Future Stock Price* for the Company, the Registration Statement fails to disclose: basis for applying price to NTM EPS multiples of 16.0x to 22.0x; and (ii) the inputs used to calculate the mid-point cost of equity discount rate of 7.7%.

37. With respect to BofA's *Discounted Cash Flow Analysis* for Canadian National Railway, the Registration Statement fails to disclose: (i) the terminal values of Canadian National Railway; (ii) line items used to calculate Canadian National Railway's projected unlevered free cash flows for fiscal years 2021 through 2029; (iii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the discount rates ranging from 5.5% to 7.0%; (v) the net debt of Canadian National Railway as of March 31, 2021; (vi) the number of fully diluted outstanding Canadian National Railway common stock; (vii) net pension assets of Canadian National Railway as of March 31, 2021; and (viii) estimate of Canadian National Railway's weighted average cost of capital.

38. With respect to BofA's *Wall Street Analysts Price Targets* analysis for Canadian National Railway, the Registration Statement fails to disclose: (i) the analysts reviewed by BofA; (ii) the price targets for the shares of Canadian National Railway common stock available as of April 19, 2021; and (iii) the inputs used to calculate the mid-point cost of equity discount rate of 6.7%.

39. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.5%; (ii) the estimated additional net debt from the Proposed Transaction.

40. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder

meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Kansas City Southern within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Kansas City Southern, and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Kansas City Southern, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Kansas City Southern, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 24, 2021

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*